**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-01734-MSK-MJW

OTTER PRODUCTS, LLC,

    Plaintiff,

v.

SEAL SHIELD, LLC,  and
KLEARKASE LLC,

    Defendants.

_____

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION**
_____

    **THIS MATTER** comes before the Court pursuant to the Defendants' Motion to Dismiss **(# 27)**, and the Plaintiff's response **(# 54)**; the Plaintiff's Motion for Preliminary Injunction **(#34)**, the Defendants' response **(# 66)**, and the Plaintiff's reply **(# 73)**; and the Plaintiff's Motion to Restrict Access **(# 36)** to certain materials submitted in support of its preliminary injunction motion, the Defendants' response **(# 65)**, and the Plaintiffs' reply **(# 78)**.

**FACTS**

    According to the Amended Complaint **(# 20)**, Plaintiff Otter Products, LLC ("Otter") holds two patents, Patent No. 7,609,512 ("the '512 patent") and Patent No. 7,158,376 ("the '376 patent"), covering certain waterproof enclosures for electronic devices.  Otter contends that Defendants Seal Shield LLC ("Seal"), and its affiliate, Defendant KlearKase LLC ("Klear"), have infringed Otter's patents by selling products known as "Sea Lion for iPhone 5" and the "KlearKase iPhone 4 case."  In addition, Otter contends that Seal breached a non-disclosure

1

agreement between the two parties by disclosing information in public court filings in a lawsuit in California (the *Treefrog* action).

The Defendants moved **(# 27)** to dismiss the Amended Complaint, arguing: (i) this Court lacks personal jurisdiction over Seal, a Florida corporation, and Klear, a Washington corporation, as they lack the requisite minimum contacts with the State of Colorado; (ii) venue in Colorado is improper pursuant to 28 U.S.C. § 1391(b), 28 U.S.C. § 1400, and the "first to file" rule; (iii) a company called Treefrog, a subsidiary of Otter, is an indispensable party to this action and must be joined by Otter pursuant to Fed. R. Civ. P. 12(b)(7), insofar as Treefrog allegedly holds an interest in the patents at issue; and (iv) the Court lacks subject-matter jurisdiction over the action on the grounds that not all holders of the patent are named as parties.

Separately, Otter has moved **(# 34)** for a preliminary injunction, arguing that Seal had repeatedly breached the non-disclosure agreement by publicly filing confidential information in the *Treefrog* litigation and in another lawsuit then-pending in Florida. Otter did not provide a proposed order expressly stating the injunctive language it seeks, but the "Conclusion" paragraph of its motion appears to request an order "enjoining Seal shield form the disclosure or use of OtterBox's confidential and proprietary information provided to Sea Shield pursuant to the parties' Non-Disclosure/Confidentiality Agreement and Amendment." Otter has also moved **(#6)** to restrict public access to certain materials submitted in conjunction with the preliminary injunction motion, arguing that those materials "disclose highly sensitive intellectual property negotiations, strategies, and policies that . . . could harm OtterBox's business if publicly disclosed."

## ANALYSIS

### A. Motion to Dismiss

The Defendants' Motion to Dismiss raises a variety of issues, each with its own standard of review. The Court addresses each in turn.

#### 1. Personal jurisdiction

In reviewing a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. S*oma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Omi Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). A court can determine whether personal jurisdiction exists based on evidence presented at a hearing or a *prima facie* showing of jurisdiction made by affidavits or otherwise that set out facts that, if true, would support jurisdiction over the defendant. *Omi Holdings*, 149 F.3d at 1091. If the latter method is used, the allegations in the Amended Complaint must be taken as true unless contradicted by the defendants' affidavits, *Behagen v. Amateur Basketball Ass'n. of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), and if there are contradictions, all disputes must be resolved in the plaintiff's favor. At this early stage of the litigation, the burden on the plaintiff is light; a *prima facie* showing is sufficient. *Wise v. Lindamood*, 89 F. Supp.2d 1187, 1189 (D. Colo. 1999).

Colorado's long-arm statute provides that a non-resident party subjects itself to the jurisdiction of Colorado courts for claims arising from the party's "(a) transaction of any business within this state; [or] (b) the commission of a tortious act within this state." C.R.S.A. § 13-1-124(1)(a) and (b). The statute codifies the "minimum contacts" test of *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and extends the courts' jurisdiction to the maximum extent consistent with the Due Process clause of the 14th Amendment. *Brownlow v. Aman*, 740 F.2d

1476, 1481 (10th Cir. 1984). Thus, the Court's analysis is limited to the question of whether the exercise of jurisdiction is consistent with the principles of due process.[1] *OpenLCR.com, Inc. v. Rates Technology, Inc.*, 112 F.Supp.2d 1223, 1227 (D. Colo. 2000); *Wise v. Lindamood*, 89 F.Supp.2d 1187, 1189 (D. Colo. 1999).

For purposes of personal jurisdiction, due process is satisfied when the defendant has sufficient "minimum contacts" with the forum state to suffice such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l. Shoe*, 326 U.S. at 316. The "minimum contacts" test examines whether the defendant has purposefully directed its activities at residents of the forum state, whether the claims asserted arise out of that purposeful direction of activity, and whether the assertion of jurisdiction under the circumstances is reasonable and fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *Teierweiler v. Croxton and Trench Holding Co.*, 90 F.3d 1523, 1532-33 (10th Cir. 1996). The quantity and nature of the required minimum contacts varies, depending on whether the plaintiff asserts general jurisdiction over the defendant – that is, because the defendant conducted "continuous and systematic activities" of a general business nature in Colorado – or whether the plaintiff asserts specific jurisdiction, because the specific injuries claimed by the plaintiff "arise out of" significant activities of the defendant "purposefully directed" at residents of Colorado. *Goettman v. North Fork Valley Restaurant*, 176 P.3d 60, 67 (Colo. 2007).

In this case, it is undisputed that neither Seal nor Klear have any actual corporate connection to Colorado; neither corporation maintains an office, employees, bank accounts or

---

[1] The Federal Circuit has determined that the Due Process Clause at issue for personal jurisdiction in a patent case is that of the Fifth Amendment, and not the Fourteenth, although that distinction is largely academic; the same standards apply under either Amendment. *OpenLCR.com, Inc. v. Rates Technology, Inc.*, 112 F. Supp.2d 1223, 1227 (D. Colo. 2000).

property, etc. in the state.  Seal has had some direct dealing with Colorado, having initiated contact with Otter in Colorado in 2010, and having maintained ongoing discussions with Otter regarding licensing opportunities between 2010 and 2012.  Such communications eventually resulted in Otter and Seal entering into the Non-Disclosure/Confidentiality Agreement that is at issue in this case.  The agreement expressly provides that it is subject to the laws of Colorado and that Colorado courts will have exclusive jurisdiction over disputes arising under it.  On two separate occasions in 2013, Seal executives traveled to Colorado to meet with Otter executives, and Seal has been party to numerous telephone and e-mail communications with Otter, directed to or received from Colorado.

There is some dispute about the extent of Seal's dissemination of the allegedly infringing products in Colorado.  Seal sells its products nationwide, either directly through its own website, or through the efforts of national retailers present in Colorado, such as Wal-Mart, Best Buy, and Amazon.com, among others.  The record also reveals that Seal advertises its products through media such as the Sky Mall catalog, which targets, among others, customers traveling into and out of Colorado by air.

Seal contends that its direct sales of the allegedly infringing products themselves in Colorado has been *de minimis*: none of the challenged Klear cases have been sold in the state,[2] and only three of the challenged Seal cases have been sold in Colorado, with at least one of those

---

[2]   This is contradicted by the affidavit of Jonathan Tudryn, tendered by Otter, in which Mr. Tudryn states that he ordered one of the challenged Klear cases via clear's website in June 2013, and Klear shipped that case to Mr. Tudryn in Colorado.

5

sales being made to Otter's counsel. Seal further contends that historical sales of <u>all</u> of its products in Colorado amount to only $1,000 of its total $34 million in sales.[3]

The Court finds these facts sufficient to support the exercise of personal jurisdiction over Seal. The record reflects that Seal has made direct sales to Colorado, as well as placed its products into the "stream of commerce" via national retailers and distributors with the clear understanding that its products will find their way to Colorado. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Seal's promotional efforts through media such as the Sky Mall catalog, which target Colorado consumers (among others) further evidences an intent or purpose by Seal to serve customers nationwide, including in Colorado. *See Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 112 (1987) (marketing efforts directed at forum state provide additional evidence of defendant's intent to serve that market). In such circumstances, the exercise of personal jurisdiction over a defendant like Seal is appropriate. *See e.g. Alcohol Monitoring Systems, Inc. v. Actsoft, Inc.*, 682 F.Supp.2d 1237, 1250-52 (D.Colo. 2010). Seal's direct contacts with Otter in Colorado strengthen the conclusion that Seal has purposefully directed its activities towards Colorado and that the claims in this case are directly related to those contacts.

The issue is less clear-cut with regard to Klear. Otter's affidavits in opposition to the motion to dismiss focus largely on Seal; Klear is mentioned only in Mr. Tudryn's affidavit, and then only that Mr. Tudryn went to Klear's website[4] and ordered a Klear case to be delivered to

---

[3] The affidavit of Christian Davis, from which this information is taken, does not indicate whether these figures reflect direct sales between Seal and Colorado residents, or whether those figures also include sales of Seal products in Colorado made by Seal's distributors and retailers, such as Wal-Mart and Best Buy.

[4] The record gives no indication of the nature or contents of Klear's website, its level of interactivity, etc.

Colorado. Otter points to no evidence that Klear sells products through national distributors or that Klear advertised its products through channels that would be expected to reach Colorado residents (indeed, the record does show what, if any, advertising Klear does, and the only sales mentioned are those from its own website). There is no indication that Klear sought out Colorado residents, directly or indirectly, to encourage them to purchase its products, and its only demonstrated instance of delivering a product into Colorado was initiated and directed by Otter. A single delivery Klear to address in Colorado to fulfill a sale initiated by Otter for purposes of this litigation is insufficient to show that Klear "purposefully availed" itself of the privileges of doing business in Colorado. *See e.g. Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (single sale made by out-of-state seller to buyer through internet website insufficient to subject seller to personal jurisdiction in buyer's state). Under these circumstances, the Court finds that it lacks personal jurisdiction over Klear.

Otter's claims against Klear are dismissed without prejudice for lack of personal jurisdiction.

2. Venue

Seal argues that the claims against it should also be dismissed on the grounds that Colorado constitutes an inappropriate venue.

Seal first invokes 28 U.S.C. § 1391. That statute provides that the appropriate venue for a civil case invoking federal question jurisdiction is either a district where any defendant resides; or a district where a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(b). However, that statute expressly states that a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction." 28 U.S.C. § 1391(c)(2). Thus, because the Court has found that Seal is

subject to personal jurisdiction in Colorado, it "resides" here for purposes of § 1391(c)(3), and thus, venue in Colorado is proper under 28 U.S.C. § 1391(b).

Seal also invokes 28 U.S.C. § 1400, which provides specific rules for venue in patent actions. That statute states that "any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). It is settled law that the definition of the term "resides" in 28 U.S.C. § 1391(c)(3) – that venue properly lies anywhere the corporate defendant is subject to personal jurisdiction -- applies to the patent venue statute as well. *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) ("the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced").

Finally, Seal argues that venue is inappropriate in Colorado because the "first to file rule" places venue for this case in Florida. Seal points out that on June 21, 2013, approximately 10 days prior to Otter's commencement of the instant action in Colorado, Seal filed a case entitled *Seal Shield, LLC and KlearKase, LLC v. Otter Products, LLC and Treefrog Developments, Inc.*, M.D. Fl. Case No. 6:13-CV-967-ORL-37. Notably, however, Seal's own affidavit of Bradley Whitchurch indicates that the Florida case is "a trademark infringement suit." The "first to file rule" provides that "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *In re Spillman Develop. Grp., Ltd.*, 710 F.3d 299, 307 (5th Cir. 2013); *see also Futurewei Technologies, Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013). This rule seeks to "avoid conflicting decisions," and thus is applied only when both cases

8

"involv[e] the same claims" *See Merial Ltd. v. Cipla, Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). Seal's litigation in Florida concerns trademark issues, rather than patent issues, and thus creates no risk of conflicting with a decision in this case. Thus, Seal's invocation of the "first to file rule" is misplaced here.

          3.  <u>Indispensable party</u>

The Court will not linger on this issue. The Defendants contend that Treefrog has an ownership interest in the patents at issue, and thus, that it is an indispensable party. The Defendants offer no evidence supporting the contention that Treefrog has an interest in the '512 patent, and Otter denies that Treefrog has an ownership interest in the '512 patent. In the absence of a showing that Otter is not the sole holder of the '512 patent, the Court rejects the Defendants' contention that Treefrog is an essential party here.

      **B. Motion for Preliminary Injunction**

Contending that Seal has violated and will continue to violate the Non-Disclosure/Confidentiality Agreement, Otter requests that this Court preliminarily enjoin Seal from doing so.

The Agreement, attached as Exhibit D to the Amended Complaint, provides that Seal shall "hold all information received from [Otter], whether written or oral, in strict confidence," shall "use such information solely for the Purpose [of evaluating the possibility of forming a business or other commercial arrangement between the parties]," and shall "not disclose such information to any third party, without prior written approval of [Otter]," among other things. Otter contends that Seal has breached this Agreement by disclosing information covered by the agreement in court filings in the lawsuits between Otter (or its subsidiaries) and Seal (and its

9

subsidiaries) in Florida and California.[5] Otter contends that these filings violate the Agreement in two separate respects: they disclose Otter's information without Otter's consent, and they reflect Seal making use of the information for a purpose other than the evaluation of the potential business relationship.

To be entitled to provisional injunctive relief, a party must show: (i) that it will suffer an irreparable injury unless the injunction issues; (ii) the threatened injury outweighs whatever damages the injunction might cause to the non-movant; (iii) that the requested relief is not adverse to the public interest; and (iv) that the movant has a substantial likelihood of succeeding on the merits of its case. *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005).

The Court has some doubt that Otter has adequately established any of the necessary elements, but it limits its focus to itself to the second and third elements. In doing so, the Court observes that Otter's complaints about Seal's conduct are twofold: (i) Seal is making impermissible disclosures of the information by filing it publicly in pending lawsuits (rather than submitting it with some restricted access), and (ii) all disclosures of Otter's confidential

---

[5] Specifically, Otter points states that on August 7, 2013, Seal publicly filed the affidavit of Mr. Whitchurch in the California action in support of Seal's motion to transfer the case. That affidavit, Otter contends, "publicized communications between [Seal] and [Otter] executives and other employees concerning licensing negotiations between the parties, including details of [Otter's] intellectual property strategies and licensing policies." Based on the Court's review, that affidavit largely discloses the various discussions and meetings that Mr. Whitchurch and other Seal executives had with Otter executives concerning the parties' consideration of a mutual licensing arrangement. Otter contacted Seal about the filing, and the parties jointly agreed to move to seal that filing.

On August 12, 2013, Seal publicly filed the same affidavit a second time in the California action, this time in conjunction with a motion to dismiss. Otter contacted Seal about the refiling of the affidavit and Seal agreed to withdraw the document.

Otter argues that Seal again breached the Agreement by filing an August 15, 2013 motion in the California case that <u>referred to</u> the now-under seal Whitchurch affidavit. Otter contends that merely referring to the affidavit constitutes a breach of the Agreement, as it reflects Seal making impermissible use of the information subject to the Agreement. Although Otter cites to the affidavit of Rachel Lamkin in support of this contention, a review of Ms. Lamkin's affidavit reveals no reference whatsoever to this event.

10

information in other lawsuits is *per se* impermissible regardless of whether public access to such information is restricted (*i.e.* it is making use of the information for purposes other than evaluating the parties' potential for doing business together, which is prohibited by the Agreement).[6]

Otter's second argument runs afoul of its obligation to show that an injunction would serve the public interest. The Court understands this argument to be that the Agreement prevents Seal from disclosing truthful information in the course of pending lawsuits. If that is correct, Otter is essentially saying that its private agreement restricts a party from using factual information in the course of non-frivolous litigation (especially in litigation between the two parties to the agreement). In effect, the agreement would permit parties, via contract, to supplement the Federal Rules of Evidence to prevent presentation of relevant, truthful evidence to a fact-finder and court. Enforcement of such provision clearly would not serve the public interest and likely is void as against public policy. *See e.g. Chambers v. Capital Cities/ABC*, 159 F.R.D. 441, 444 (S.D.N.Y. 1995) ("it is against public policy for parties to agree not to reveal, at least in . . . litigation arising under federal law, facts relating to alleged or potential violations of such law").

Moreover, as to Otter's contention that an injunction is warranted to prevent Seal from publicly disclosing documents filed in other lawsuits, the Court finds that Otter has carried its burden of showing that the harm to Seal from such an injunction is outweighed by the potential harm to Otter if the injunction is not granted. Several factors underlie this finding. First, the Court observes that Otter has a number of remedies available to address this problem. Otter

---

[6] Otter goes so far as to argue that a subsequent addendum to the Agreement, signed by both sides, provides that "information disclosed or received between the parties [during a particular time] shall be forever inadmissible in any forum for any reason."

concedes that it has successfully moved, both independently and in concert with Seal, to restrict public access to filings in the subject lawsuits in order to prevent or cure any injury. To the extent that Otter believes that Seal is making such filings for frivolous or vexatious purposes, it may seek appropriate sanctions. *See e.g.* Fed. R. Civ. P. 11(b)(1), 28 U.S.C. § 1927. Of course, the appropriate court from which to seek such sanctions is the court in which such filings take place. This exposes an additional conceptual problem with Otter's requested injunction: it would place this Court in the position adjudicating the propriety of filings made in a different case presided over by a different court. Assuming this Court had jurisdiction and authority to do so, it declines the invitation.

Accordingly, Otter's motion for preliminary injunction is denied.

### C. Motion to Restrict Access

Finally, Otter moves to restrict public access to certain filings accompanying its preliminary injunction motion, pursuant to D.C. Colo. L. Civ. R. 7.2. Specifically, it seeks to restrict access to the affidavit of Ms. Lamkin and Exhibits 1 and 2 accompanying that affidavit, and Exhibits 2 and 5 to the affidavit of Garret Leach.

The Supreme Court acknowledged a common law right of access to judicial records in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). This right is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *See In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002). Judges have a responsibility to avoid secrecy in court proceedings because "secret court proceedings are anathema to a free society." *M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996). There is a presumption that documents essential to the judicial process are to be available to the public, but they may be sealed when the public's right of access is outweighed by interests which favor

nondisclosure. *See United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). It is within the district court's discretion to determine whether a particular court document should be sealed. See Nixon, 435 U.S at 599.

Here, the Court finds nothing in Ms. Lamkin's affidavit that warrants a restriction on public access. That affidavit merely repeats facts already revealed in the preliminary injunction motion (*e.g.* that Otter and Seal engaged in negotiations over a potential licensing deal), recites matters of public record in the California action, and discusses the contents of the Whitchurch affidavit only in general and conclusory terms, without disclosing any information that could arguably be said to pose a risk of harm to Otter if publicly disclosed.

The Court also finds that Exhibit 1 to Ms. Lamkin's affidavit, a copy of the Non-Disclosure/Confidentiality Agreement, does not warrant restriction. Otter previously sought **(#9)** and obtained **(# 87)** a ruling by the Court that this document warranted restricted access, with Otter contending that the very disclosure of its negotiations with Seal constituted material that could be harmful to Otter if disclosed. However, upon closer review of the record here, the Court finds that Otter made precisely such a disclosure at page 4 of its publicly-filed preliminary injunction motion, referencing "communications between Seal Shield's CEO and OtterBox executives and other employees <u>concerning licensing negotiations between the parties</u>." *Docket # 34* at 4 (emphasis added). Having now disclosed the very fact allegedly justifying the restriction on access to the Agreement, Otter can no longer contend that the Agreement warrants such restrictions.

Exhibit 2 to Ms. Lamkin's affidavit was purportedly a copy of an addendum to the parties' non-disclosure agreement. (The document in the record consists solely of the cover page for that exhibit, with no addendum attached. The Court's reference to the addendum in this

13

Order is derived from copies of the addendum appearing elsewhere in the record.)  Because the Agreement itself no longer warrants restriction, and there is nothing in the addendum that discloses any new confidential information, the Court finds that the addendum does not warrant restriction either.

Exhibits 1 and 2 to Mr. Leach's affidavit are a copy of a copy of Seal's motion to transfer and the supporting Whitchurch affidavit, both filed in the California litigation.  Although this Court is less than completely persuaded that public disclosure of the contents of that affidavit would pose any meaningful risk of harm to Otter (and the motion itself appears to be completely innocuous in its contents), the Court concedes that perhaps some of the information contained in the affidavit is arguably of a sensitive nature and, more importantly, the parties have represented that the California court has seen fit to restrict public access to these documents.  Solely out of the desire to honor that court's decision, this Court will permit these exhibits to be restricted from public access.

Finally, Exhibit 5 to Mr. Leach's affidavit appears to be the entirety of the Defendants' motion to dismiss in this action, the same documents publicly-filed at Docket # 27.  (The exhibit has highlighted a brief passage in an affidavit that mentions Ms. Lamkin's purchase of one of the accused Seal cases, although the significance of that highlighting is unclear.)  Otter's motion does not explain why restriction of this document is warranted, and the Court sees no justification to restrict access to a copy of a document that is already publicly-filed.

Accordingly, Otter's motion to restrict access is granted only with regard to Exhibits 1 and 2 to Mr. Leach's affidavit; the remaining materials do not warrant any restrictions on access. The Court directs that, within 7 days of the date of this Order, Otter publicly file copies of Ms. Lamkin's affidavit and supporting exhibits, and that the Clerk of the Court modify Docket # 35

to reflect that restrictions on sub-documents 1-3 have been lifted.  The Court sees little purpose in requiring a refiling of Exhibit 5 to Mr. Leach's affidavit.

## **CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss **(# 27)** is **GRANTED IN PART**, insofar as the Court finds that it lacks personal jurisdiction over Defendant KlearKase, LLC, and thus, all claims against that Defendant are **DISMISSED** without prejudice; and **DENIED IN PART**, with regard to all claims against Defendant Seal Shield, LLC.  The caption of the case is **DEEMED AMENDED** to reflect the dismissal of all claims against Defendant KlearKase, LLC.  The Plaintiff's Motion for Preliminary Injunction **(# 34)** is **DENIED**.  The Plaintiff's Motion to Restrict Access **(# 36)** is **GRANTED IN PART** and **DENIED IN PART** as set forth above.

Dated this 24th day of March, 2014.

**BY THE COURT:**

_/s/ Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge